A89A0603. IN THE INTEREST OF R. J.
(382 SE2d 671)

SOGNIER, Judge.

R. J., who was 16 years old at the time the alleged offenses were committed, appeals from an order of the Juvenile Court of Fulton County transferring to superior court for prosecution charges against him of aggravated assault on a police officer and aggravated assault.

The complaint in the juvenile court alleged that appellant had struck the victims in the head with an iron pipe; that the victims were a Fulton County police officer who was attempting to make an arrest and a MARTA bus driver who was attempting to aid the police officer; that both victims had been hospitalized and were in serious condition; and that appellant had admitted committing the assault.

1. Appellant contends the juvenile court failed to follow OCGA § 15-11-39 (a) (3) (A) at the transfer hearing because it failed to require the State to introduce evidence that appellant committed the delinquent acts.

(a) Appellant argues that the juvenile court illegally substituted the findings of fact made by a referee at a prior preliminary detention hearing for evidence that appellant committed the delinquent acts alleged. We do not agree. The transcript of the transfer hearing reveals that the juvenile court judge found that at a preliminary detention hearing presided over by a referee findings of fact were made, including a finding that probable cause existed to believe appellant, using an iron pipe, had struck and seriously injured a police officer and a MARTA bus driver who came to the officer's aid. The findings of the referee were made the order of the court. However, the transcript does not reveal that those findings were used as a substitute for the presentation of evidence at the transfer hearing. Rather, additional evidence was presented, including testimony from Detective Robert Willbanks, an investigator for the Atlanta Homicide Task Force Assault Unit and the original complainant. Although Willbanks did not actually witness the incident, he was the officer called to the scene to investigate, and in the course of his investigation he interviewed eyewitnesses. Willbanks was also involved in the apprehension of appellant. He testified that when he arrived at the scene, some 15 or 20

marked police cars from several jurisdictions were present, as were representatives of the media and approximately 75 to 100 or more spectators. Willbanks further testified that based on his investigation, it was his belief that both victims received blunt trauma head wounds to the back of the head, the result of being struck by a heavy iron pipe wielded by appellant, and that as a result the police officer was in a nursing home and would never be able to return to work. Appellant and a companion fled and were apprehended by Willbanks and 10 or 15 other officers in the woods adjacent to the scene. Thus, it is apparent that the juvenile court heard evidence at the transfer hearing, and did not substitute therefor the referee's findings of fact in determining that reasonable grounds existed to believe appellant committed the offenses alleged.

(b) Appellant also alleges that because the referee's findings of fact were based primarily on a custodial statement made by appellant, he was denied the opportunity to challenge the admissibility of that statement when, at the transfer hearing, the juvenile court substituted the referee's findings of fact for evidence that appellant committed the delinquent acts. However, appellant fails to support his assertion that the referee's findings were based on appellant's custodial statement. Evidence was heard at the preliminary detention hearing showing that the police had chased a car which eventually crashed through the wall of an apartment building; that appellant's older brother was scuffling with a police officer over possession of the officer's gun, which discharged; that spectators were urging appellant to assist his brother; and that appellant was involved in the assault. Thus, the referee's findings of fact were based on evidence heard as well.

(c) Contrary to appellant's argument, this court's pronouncement in *C. L. A. v. State of Ga.*, 137 Ga. App. 511 (224 SE2d 491) (1976) that a transfer hearing is "of a totally different nature" from a preliminary detention hearing does not mean that a higher standard of proof that the child committed the delinquent act is required in a transfer hearing. In *C. L. A.* this court made clear only that a transfer hearing was different from a preliminary detention hearing in that, unlike the preliminary detention hearing, several other showings must be made *in addition to* the showing that there are reasonable grounds to believe the juvenile committed the acts alleged. Thus, we find no merit in appellant's assertion that the use of the referee's findings of fact substituted a lesser standard of proof than that required under OCGA § 15-11-39.

Although we agree with appellant that some of Willbanks' testimony was clearly hearsay, which would not suffice to support a conviction, OCGA § 15-11-39 (a) (3) "requires only that the court find that there are 'reasonable grounds to believe' that the child commit-

ted the act alleged, not 'proof beyond a reasonable doubt' as is required for a conviction. [Cit.]" *In re K. S. J.*, 258 Ga. 52, 53 (1) (365 SE2d 820) (1988).

(d) We need not address specifically appellant's remaining arguments as to this issue, as they are based exclusively on appellant's contention that the juvenile court illegally substituted the referee's findings of fact for the taking of evidence, and we have found no merit in this contention. See Div. 1 (a), supra.

"[T]he [juvenile] court's determination [as to transfer], if based on evidence, will not be controlled by the appellate court. [Cit.] . . . In the instant case, pretermitting deciding whether the evidence might support a finding that [appellant] is guilty of the [acts alleged], we find that the court did not abuse its discretion in finding that there were reasonable grounds to believe that [appellant] committed [the acts alleged]." *In re K. S. J.*, supra at 53 (1).

2. Appellant next contends the juvenile court erred by failing to require that the State present evidence of appellant's amenability to treatment or lack thereof before balancing that factor against the community's interest in processing him as an adult. We find no merit in this contention.

OCGA § 15-11-39 (a) (3) (C) permits transfer if the court in its discretion determines there are reasonable grounds to believe, inter alia, that "[t]he interests of the child and the community require that the child be placed under legal restraint and the transfer be made." Although here, as in the cases relied upon by appellant, the State introduced no evidence that appellant was not amenable to treatment, the situation sub judice differs from the cases cited by appellant in that here the decision to transfer was not based even in part on a finding that appellant was not amenable to treatment. Rather, the juvenile court presumed, and thus found, that appellant *was* amenable to treatment: "He has no record. . . . In his socio-economic status, if he were an incorrigible or bad person or . . . given to violence, we would have had a record a long, long time ago. . . . So we have to look at him and say this individual has a right to treatment as a juvenile. We have to assume he's amenable to treatment as a juvenile." The juvenile court judge gave appellant the benefit of a full presumption that he was fully amenable to treatment, and thus, even if the failure of the State to present evidence on this factor was error, appellant can show no harm. "[I]t is well established that '(a)n appellant must show harm as well as error to warrant reversal. (Cit.)' [Cit.]" *Raines v. State*, 186 Ga. App. 239, 242 (4) (c) (366 SE2d 841) (1988).

The Supreme Court has held that OCGA § 15-11-39 "subsumes the juvenile's amenability to treatment within the concept, 'the interest of the child,' and authorizes a juvenile court to transfer to the

superior court a juvenile who is amenable to treatment if the juvenile court finds that the amenability factor is outweighed by the interests of the community in processing the child as an adult." *In the Interest of J. J. S.*, 246 Ga. 617, 618 (1) (272 SE2d 294) (1980). See also *Spradley v. State*, 161 Ga. App. 180, 181 (288 SE2d 133) (1982). In the case sub judice, after finding that appellant was amenable to treatment, the juvenile court went on to state that "[w]e have to, however, look and see if there is a public interest in the criminal Court prosecution in this that outweighs that, and that's what I'm basically interested in at this point." The juvenile court thus properly followed the procedure mandated by OCGA § 15-11-39, and we find no reversible error in the State's failure to present evidence on appellant's amenability to treatment.

3. Appellant finally enumerates as error the criteria used by the juvenile court in determining the interest of the community. Appellant argues that the legislature intended to define that phrase narrowly and to limit it to issues of community safety or the dangerousness of the juvenile. However, appellant cites no authority for that conclusion, and we must assume that the statute means what it says, involving a broader range of community interests. "Statutes should be read according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operation. [Cit.]" *Integon Indem. Corp. v. Canal Ins. Co.*, 256 Ga. 692, 693 (353 SE2d 186) (1987). Here, the juvenile court judge concluded that "[t]he alleged victim was a public servant engaged in the performance of dangerous duties when he was grievously injured and struck down. In this case, the court finds that the interest of the public in having active involvement in the decision making process by the grand jury and, if indicated, by a traverse jury is compelling. Additionally, the court finds that the public's right to know the events and the outcome is compelling in these circumstances."

The juvenile court's determination was based on evidence. The function of this court is limited to ascertaining whether some evidence exists to support the juvenile court's determination. " 'Determinations of a juvenile court made on an exercise of discretion, if based upon evidence, will not be controlled by this court.' [Cit.]" *In re E. W.*, 256 Ga. 681, 683 (353 SE2d 175) (1987). Accordingly, we affirm the order of transfer.

*Judgment affirmed. Banke, P. J., and Pope, J., concur.*

DECIDED MAY 16, 1989 —
REHEARING DENIED MAY 30, 1989 — 

*Raoul Lerow, Catherine B. Lerow*, for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Rebecca A. Keel, George J. Robinson, Jr., Assistant District Attorneys,* for appellee.